UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL NO. 22-CR-00136-DCR　　　　　　　　　　*ELECTRONICALLY FILED*

UNITED STATES OF AMERICA　　　　　　　　　　　　　　PLAINTIFF

VS.　　DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

SHERMAN KELVIN COMBS　　　　　　　　　　　　　　　DEFENDANT

** ** ** ** ** ** ** ** **

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, Defendant Sherman Kelvin Combs respectfully submits the following objections to the Report and Recommendation issued by the Honorable United States Magistrate Judge Matthew A. Stinnett on January 20, 2023. [Record No. 27].

**OBJECTIONS**

The Magistrate's Report and Recommendation ('Magistrate's Report') to deny Mr. Comb's Motion to Dismiss errs in finding 18 U.S.C. § 922(g)(8) constitutional. The Magistrate Judge analogizes the disputed statute to the historic surety laws; two regulations with incomparable burdens, thus failing to satisfy *Bruen*.

*Bruen* explains that during the historical inquiry, the modern and historical regulation must have a "comparable burden" to be properly analogized. *New York State Rifle & Pistol Ass'n v. Bruen,* 142 S.Ct. 2111, 2133, 213 L.E.2d 387 (2022). The Magistrate Judge found that the government identified an appropriate historical analogue in the surety laws since the laws share the same "mechanics." [Record No. 27 at 10-13]. Although both regulations may have impacted

1

individuals only after a civil proceeding determined them reasonably likely to pose a threat, this is not the crux of what the Supreme Court in *Bruen* focused on. There, the Court, when comparing the surety laws to the New York "proper cause" regulation, noted that the *burden* of the surety laws was minimal. *Id.* at 2149 (stating that "proving special need simply avoided a fee rather than a ban."). The burden imposed by § 922(g)(8) cannot be overcome by showing a special need or posting a bond, differentiating it from the surety laws. *See Bruen,* 142 S.Ct. at 2131 (explaining that "materially different" means of addressing the same societal problem could be evidence of the modern regulation's unconstitutionality). Put simply, the surety laws did not eradicate an individual's right to bear arms for self-defense under the Second Amendment. Conversely, § 922(g)(8) does exactly that. It eliminates the exercise of a constitutionally protected right in contravention of *Bruen*.

As the Supreme Court stated in *Heller* and repeated in *McDonald,* "individual self-defense is 'the central component' of the Second Amendment right." *McDonald,* 561 U.S. at 767 (quoting *Heller*, 554 U.S., at 599). The surety laws did not invade that central component of the Second Amendment right. Instead, they simply required the posting of a bond so that the right could be exercised. By contrast, § 922(g)(8) makes no allowance for exercising the central right protected by the Second Amendment.

Further, Magistrate Judge Stinnett compares the surety law's showing of need or posting a bond to the temporary nature of domestic violence orders. [Record No. at 12-13]. However, as the Report notes, a domestic violence order in Kentucky can be in effect up to three years, and is renewable for similar three-year periods without limit. See, KRS § 403.740(4). This is hardly a de minimis period during which the government may abrogate a central constitutional protection. The temporal quality of the burden does not mean the burden itself is of equal measure (or

comparable) to its claimed historical analogue. In short, the "how," as Magistrate Judge Stinnett labels it, between the surety laws and § 922(g)(8) is far from comparable.

Next, Magistrate Judge Stinnett looks at what he calls the "why," concluding that the surety laws and § 922(g)(8) share the same purpose: this idea of regulating those posing a threat to society. [Record No. 27 at 14]. The Court in *Bruen* notes that the purpose of the surety laws was not to "directly restrict public carry" but that the laws "provide[d] financial incentives for responsible arms carrying." *Bruen,* 142 S.Ct. at 2150. The purpose of § 922(g)(8), however, is to *directly* restrict possession and public carrying for individuals under domestic violence orders. Once again, this is starkly different from the surety laws.

What the Magistrate' Report glosses over is that § 922(g)(8) prohibits individuals from exercising their Second Amendment rights before they exploit them, something notably different from other constitutional rights. *See Cantwell v. Connecticut,* 310 U.S. 296, 308, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) (holding that maintenance of public order does not justify suppressing one's First Amendment rights). The Magistrate questions the lens under which courts should view firearms regulations: a broad lens, like the government supports, or a narrower one focused on just individuals subjected to domestic violence orders, like Mr. Combs. [Record No. 27 at 19]. The lens, however, has already been determined:

> [t]he Second Amendment "is the very product of an interest balancing by the people" and it "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms" for self-defense. *Heller*, 554 U.S., at 635. It is this balance – struck by the traditions of the American people – that demands our unqualified deference.

*Bruen*, 142 S. Ct. at 2131.

The Court has been firm in its position that one's constitutional rights can be restricted only after abuse. *See id.; De Jonge v. Oregon,* 299 U.S. 353, 364-65 (1937) (finding that legislative

3

intrusion is only justified when handling abuse of constitutional rights). The proper lens therefore is one that jealously guards constitutional rights until there is a due-process proven breach. To hold § 922(g)(8), and firearms regulations more generally, to a different standard than other fundamental rights is to hold the Second Amendment as a lesser constitutional right.

Continuing, the Magistrate's Report places weight on pre-*Bruen* cases in rejection of the *Perez-Gallan* court's analysis. [*see* Record No. 27 at 16]. However, the cited cases were decided under the means test which is no longer the appropriate test post-*Bruen*. While these cases may showcase the government's interest in § 922(g)(8), they do nothing for supporting the statute's constitutionality. Moreover, he again emphasizes the temporariness of the prohibition, quoting the court in *United States v. Kelly* which claims that history would support temporary regulations as being less constitutionally suspect. 2022 WL 17336578 (M.D.Tenn. Nov. 16, 2022). Not the court in *Kelly*, the government, nor Magistrate Judge Stinnett have presented any historical evidence to support such a contention. The timing of the regulation is not the focus of the *Bruen* analysis; instead, it is the burden that matters. In no way is the no-possession burden imposed by § 922(g)(8) comparable to the slight burden imposed by the surety statutes. Indeed, *Bruen* noted that the "overlapping scope of surety statutes and criminal statutes suggests that the former were not viewed as substantial restrictions on public carry." *Bruen*, 142 S. Ct. at 2150. Thus, the Report errs in finding § 922(g)(8) constitutional, and the District Court should reject that finding.

Finally, the Magistrate Judge's Report found that Defendants § 922(a)(6) charge survived the motion to dismiss because § 922(g)(8) is constitutional. Given that he erred in finding § 922(g)(8) constitutional, the District Court will need to address the issue of § 922(a)(6) being immaterial. That issue is fully briefed by the Defendant in Record Nos. 23-1 and 26. The arguments contained therein are incorporated herein by reference.

4

## CONCLUSION

For the foregoing reasons, the District Court should reject the Magistrate's Report and Recommendation. The Court should find that: (1) § 922(g)(8) is unconstitutional per *Bruen*; and (2) the § 922(a)(6) charge should be dismissed as the alleged conduct is immaterial as a matter of law.

Respectfully submitted,

/s/ Thomas C. Lyons
THOMAS C. LYONS, ESQ.
Law Offices of Thomas C. Lyons
201 West Short Street, Suite 800
Lexington, Kentucky 40507
859-231-0055
thomaslyons@hotmail.com
*Counsel for Defendant, Sherman Kelvin Combs*

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Defendant's Objections to Magistrate Judge's Report and Recommendation has been served on January 24, 2023 by filing same via the CM/ECF System, which will send electronic notice to all counsel of record.

/s/ Thomas C. Lyons
THOMAS C. LYONS, ESQ.

Cc:   Sherman Kelvin Combs