UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 22-136-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| SHERMAN KELVIN COMBS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Sherman Combs has filed a motion to dismiss the Indictment, charging him with possession of a firearm while subject to a domestic violence order ("DVO") and knowingly making a false or fictitious statement to a federally licensed firearms dealer in violation of 18 U.S.C. §§ 922(g)(8) and 922(a)(6).  Combs argues that 18 U.S.C. § 922(g)(8) fails the Second Amendment test recently established by the United States Supreme Court in *New York State Rifle & Pistol Ass'n. v. Bruen*, 142 S. Ct. 2111 (2022), and as a result, Combs furnished all *material* information required by section 922(a)(6). [Record No. 23]  As a result, he claims he cannot be convicted under either Count 1 or 2 of the Indictment.

The United States appears to argue that Second Amendment protection is limited to law-abiding, responsible citizens based on the Second Amendment's plain language and precedent from the United States Supreme Court.  [Record No. 25]  Alternatively, the government contends that surety statutes and historical laws disarming "dangerous people" provide a sufficient historical analogue to satisfy *Bruen*'s Second Amendment test.  [*Id.*]  But even if section 922(g)(8) is unconstitutional, the United States contends that "whether [Combs]

was prohibited from possessing a firearm is irrelevant to falsely concealing his status during the acquisition of a firearm under [section] 922(a)(6)." [*Id.*]

The motion was referred to United States Magistrate Judge Matthew A. Stinnett for issuance of a Report and Recommendation ("R & R") pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Stinnett's R & R recommended denying Combs' motion to dismiss the indictment because he concludes that surety laws are adequately comparable to section 922(g)(8). [Record No. 27] Combs objected to this recommendation, maintaining that surety laws are insufficiently analogous and, therefore, his failure to disclose the DVO to a licensed firearms dealer is justified. [Record No. 29]

After careful review of the matter, the Court will grant Combs' motion to dismiss as it relates to the charge contained in Count 1 of the Indictment. As discussed more fully below, the United States has failed to provide a comparable historical analogue. The motion will be denied regarding the charge contained in Count 2 because knowingly making a false statement to a firearms dealer is independent of, and may be prosecuted separately from, section 922(g)(8)'s constitutional infirmity.

**I. Background**

On June 15, 2022, the Harrison County Family Court issued a DVO against Combs "after a hearing of which he received actual notice," and "an opportunity to participate." [Record No. 5] The parties acknowledge that DVO procedures within the Commonwealth of Kentucky do not require appointment of counsel for the respondent and a jury is not empaneled to resolve any factual disputes. In this case, the DVO prohibited Combs from "harassing, stalking, or threatening an intimate partner," and "explicitly prohibited the use, attempted use, or threatened use of physical force against such intimate partner that would reasonably be

expected to cause bodily injury." [*Id.*] Combs allegedly purchased a .357 Magnum revolver from a licensed firearms dealer a few days later, and indicated on the purchase application that he was not subjected to a DVO. [*Id.*]

In Count 1, a federal grand jury charged Combs with being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(8). In Count 2, he was charged with knowingly making a false statement to a firearms dealer, "which statement was intended and likely to deceive said dealer as to a fact material to the lawfulness of the sale and acquisition of said firearm." [Record No. 1] Combs argues that the indictment against him should be dismissed because the United States Supreme Court's *Bruen* opinion renders 18 U.S.C. § 922(g)(8) unconstitutional and that, as a result, his false statement to the seller of the subject firearm cannot be material under 18 U.S.C. § 922(a)(6).

## II. Legal Analysis

### A. The Constitutionality of Section 922(g)(8) Post-*Bruen*

The Supreme Court's *Bruen* opinion reinforced a "text and history" approach to the Second Amendment. 142 S. Ct. at 2128-29. The Court held, "that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2126. However, "the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). "To justify its regulation, the government . . . must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

#### i. Plain Text of the Second Amendment

The Second Amendment of the United States Constitution states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear

Arms, shall not be infringed." The Constitution's "words and phrases were used in their normal and ordinary as distinguished from technical meaning." *United States v. Sprague*, 282 U.S. 716, 731, 51 S. Ct. 220, 75 L. Ed. 640 (1931); *see also Heller*, 554 U.S. at 576. "Normal meaning may of course include an idiomatic meaning, but it excludes secret or technical meanings that would not have been known to ordinary citizens in the founding generation." *Heller*, 554 U.S. at 576-77.

The United States argues that "[t]he Supreme Court limited the Second Amendment to 'law-abiding, responsible citizens.'" [Record No. 25 (quoting *Heller*, 554 U.S at 635)]. And a few other courts have been confronted with similar arguments. In *United States v. Hill*, the court considered whether 18 U.S.C. § 922(g)(1), which prohibits a felon from possessing a firearm, was unconstitutional in light of *Bruen*. No. 22-249, 2022 WL 17069855, at *1 (S.D. Tex. Nov. 17, 2022). It stated that, "[w]hile *Heller* and *Bruen* repeatedly discussed the Second Amendment in the context of law-abiding citizens, neither opinions [sic] clarified which groups qualified as 'the people,' as that term appears in the Second Amendment." *Id.* at 3. The court indicated that this has led to "dueling interpretations by district courts nationwide on the question of whether 'the people' should be read more broadly, such as in the context of the First and Fourth Amendments, or narrowly, such as in the case of voting rights." *Id.*

Similarly, in *United States v. Perez-Garcia* the court stated that "the distinction between law-abiding and non-law-abiding citizens in *Heller*, *McDonald*, and *Bruen* 'clarifies the bounds of the plain text of the Second Amendment.'" No. 3:22-CR-01581022, 2022 WL 4351967, at *5 (S.D. Cal. Sept. 18, 2022) (quoting *United States v. Ingram*, No. 0:18-557, 2022 WL 3691350, at *3 (D.S.C. Aug. 25, 2022)). There, the defendant had "been charged

with a crime based on a finding of probable cause," and was not "considered a 'law-abiding' or responsible citizen, so he [was] outside the plain text of the Second Amendment." *Id.* at \*6.

Other courts have "decline[d] to read into *Bruen* a qualification that Second Amendment rights belong only to individuals who have not been accused of violating any laws," because "[t]his argument ignores the Supreme Court's emphasis on an individual's conduct, rather than status, to decide if Second Amendment protection exists." *United States v. Kays*, No. CR-22-40, 2022 WL 3718519, at \*2 (W.D. Okla. Aug. 29, 2022); *see also United States v. Bernard*, No. 22-CR-03, 2022 WL 17416681, at \*7 (N.D. Iowa Dec. 5, 2022) ("The Court rejects the government's argument that the Second Amendment applies only to law-abiding citizens as a textual matter . . . the plain reading of the Second Amendment covers defendant who is a person under the Constitution.").

*Heller* provides guidance regarding this issue. *Cf. Bruen*, 142 S. Ct. at 2126 ("In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."). In *Heller*, the United States Supreme Court analyzed whether the "right of the people" was a collective or individual right. 554 U.S. at 579-80. To aid its analysis, it compared "the people" in the Second Amendment to other provisions of the Constitution, and "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset." *Id.* The Court clarified:

> "the people" seems to have been a term of art employed in select parts of the Constitution . . . . [Its uses] sugges[t] that "the people" protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community.

*Id.* at 580 (quoting *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265, 110 S. Ct. 1056, 108 L.Ed.2d 222 (1990)). The Court "start[ed] therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 581.

Here, as stated by Magistrate Judge Stinnett, limiting "the people" to only law-abiding, responsible citizens does not match "the people" in the Fourth Amendment, protecting people from unreasonable searches and seizures by the government. [Record No. 27] It is "a definition that would negate the entire purpose of the Fourth Amendment." [*Id.* (citing *Heller*, 554 U.S. at 644 (Stevens, J., dissenting).]

The United States appears to also argue that limiting the Second Amendment right to "law-abiding, responsible citizens" is binding precedent—or at least persuasive—because "[t]his limitation was confirmed repeatedly by the Supreme Court in *Bruen*." [Record No. 25] But "[t]he issue of whether a non-law-abiding citizen qualifies for Second Amendment protection was not before the Court." *United States v. Goins*, No. 5:22-cr-00091, 2022 WL 17836677, *5 (E.D. Ky. Dec. 21, 2022). "[T]he Court only stated that law-abiding citizens are part of the people protected by the Second Amendment," meaning it is sufficient but not "necessary to be law abiding to assert Second Amendment rights." *Id.* Thus, even assuming that Combs is not a law-abiding, responsible citizen, the Constitution presumptively protects his right to possess a firearm under the plain text of the Second Amendment.

In either event, the United States did not timely object to Magistrate Judge Stinnett's R&R. Although this Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which timely objections are made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither

- 6 -

party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Count one of Comb's indictment, therefore, must be dismissed unless "the government . . . demonstrate[s] that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

### ii. Historical Tradition

"If the district court concludes that [an individual's] proposed course of conduct is covered by the plain text of the Second Amendment, it should then determine whether historical evidence . . . demonstrates that the [regulation is] consistent with the nation's historical tradition of firearm regulation." *Oakland Tactical Supply, LLC v. Howell Twp.*, No. 21-1244, 2022 WL 3137711, at *2 (6th Cir. Aug. 5, 2022) (citing *Bruen*, 142 S. Ct. at 2138); *see also Goins*, 2022 WL 17836677, at *7 ("To find that firearm activity is unprotected by the Second Amendment, a court must compare and contrast the modern law at issue to some historic analog."). Some "historical analogies . . . are relatively simple to draw, [but] other cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *Bruen*, 142 S. Ct. at 2132. The United States Supreme Court did not "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," but "*Heller* and *McDonald* point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132-33.

The United States argues that surety statutes are sufficiently analogous to Section 922(g)(8). *Bruen*'s second metric—*why* the regulation burdens an individual's right to armed self-defense—arguably supports the United States' argument. "In the mid-19th century, many jurisdictions began adopting surety statutes that required certain individuals to post bond

before carrying weapons in public." *Bruen*, 142 S. Ct. at 2148. Massachusetts enacted the following surety law in 1836:

> If any person shall go armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury, or violence to his person, or to his family or property, he may, on complaint of any person having reasonable cause to fear an injury, or breach of the peace, be required to find sureties for keeping the peace, for a term not exceeding six months, with the right of appealing as before provided.

Mass. Rev. Stat., ch. 134, § 16 (1836).

The *Bruen* Court explained that "the Commonwealth required any person who was reasonably likely to 'breach the peace,' and who, standing accused, could not prove a special need for self-defense, to post a bond before publicly carrying a firearm." 142 S. Ct. at 2148. It was "intended merely for prevention, without any crime actually committed by the party, but arising only from a probable suspicion, that some crime [was] intended or likely to happen." 4 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 249 (1769). Blackstone further stated of sureties in general that "[w]ives may demand it against their husbands; or husbands, if necessary, against their wives." *Id.* at 251.

The statute at issue in this case, 18 U.S.C. § 922(g)(8), prohibits a person who is subject to a domestic violence restraining order from possessing a firearm.[1] A DVO is issued after a judge determines by a preponderance of the evidence that the individual is a "credible threat" or "real threat" to the safety of a child or partner. *See United States v. Baker*, 197 F.3d 211, 216 n.3 (6th Cir. 1999). Surety laws and section 922(g)(8) attempt to prevent known allegedly reckless individuals from using a firearm in furtherance of a crime. *Cf. Bruen*, 142 S. Ct. at

---

[1] The Court mentions that the statute does not prohibit an individual from obtaining other dangerous weapons but, other than in response to questions from the Court during oral arguments, the parties have not argued that the statute is underinclusive.

2149 (labeling those burdened by surety laws as "(allegedly) reckless" (quoting *Wrenn v. District of Columbia*, 864 F.3d 650, 661(D.C. Cir. 2017))). Therefore, section 922(g)(8) and surety laws have an arguably similar social purpose for burdening an individual's right to bear arms under *Bruen*'s second metric even though surety laws did not specifically address domestic violence. The United States heavily relies on the fact that "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." See *Bruen*, 142 S. Ct. at 2133.

But *Bruen*'s first metric—*how* the law burdens an individual's right to armed self-defense—is markedly different. Surety statutes required the individual to either show a need for self-defense or post a bond. "[T]he burden these surety statutes may have had on the right to public carry was likely . . . insignificant," and there is "little reason to think that the hypothetical possibility of posting a bond would have prevented anyone from carrying a firearm for self-defense in the 19th century." *Bruen*, 142 S. Ct. at 2150.

"[S]ureties, in their most potent form, were only a 'possible disarmament' if the person violated the surety," *United States v. Perez-Gallan*, No. 22-CR-00427, 2022 WL 16858516, at *10 (W.D. Tex. Nov. 10, 2022), but Section 922(g)(8) is a complete deprivation of an individual's ability to possess a firearm for the length of the DVO. The burden imposed by section 922(g)(8) is materially different from posting a bond or showing a special need for self-defense, which favors a finding of unconstitutionality. See *Bruen*, 142 S. Ct. at 2131 ("[I]f

earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional.").[2]

The United States also argues that section 922(g)(8) is sufficiently analogous to historical laws "disarming dangerous persons," because the Framers were concerned with "'virtuous citizens' retain[ing] the right to bear arms," not "those who act counter to society's welfare."  [Record No. 25 (quoting *Folatar v. Attorney General*, 980 F.3d 897, 909 (3d. Cir. 2020).]  This section of the United States' argument is generalized, proffering various quotes in an effort to "[reflect] the well-established common-law principle that dangerous people could be disarmed."  [*Id.*]  Magistrate Judge Stinnett does not appear to base his decision on historical laws other than surety statutes, and the United States failed to timely object to Magistrate Judge Stinnett's R&R.  However, the United States did not satisfy its burden even if its argument had not been not waived.

Under *Bruen*'s first metric (i.e., *how* the regulation burdens an individual's right to armed self-defense), the United States contends that 922(g)(8) "is similar to historical statutes requiring an oath of allegiance for those deemed a threat to the political order or temporarily disarming those who terrorized the community."  [Record No. 25]  It is unclear how an oath is similar to section 922(g)(8)'s complete deprivation for the length of a DVO because "[t]hose 'willing to swear undivided allegiance to the sovereign' were permitted to keep their arms." *Kanter v. Barr*, 919 F.3d 437, 457 (7th Cir. 2019) (Barrett, J., dissenting) (citing Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America:*

---

[2]     The United States also has not provided any evidence that surety laws were enforced. *See id.* at 2149 ("That is surely too slender a reed on which to hang a historical tradition of restricting the right to public carry.").

*The Legal Context of the Second Amendment*, 25 L<span style="font-variant:small-caps">aw</span> & H<span style="font-variant:small-caps">ist</span>. R<span style="font-variant:small-caps">ev</span>. 139, 157 (2007)).  The United States does not elaborate, failing to satisfy its burden.  *See Stevens v. Michigan State Ct. Admin. Off.*, No. 21-1727, 2022 WL 3500193, at *6 (6th Cir. Aug. 18, 2022) ("The Supreme Court recently confirmed that, in this search for analogues, courts should not 'resolve historical questions in the abstract,' but rather may 'follow the principle of party presentation' and 'decide a case based on the historical record compiled by the parties.'" (citing *Bruen*, 142 S. Ct. at 2130 n.6)).  The law also does not satisfy *Bruen*'s second metric (i.e., *why* the regulation burdens an individual's right) because "confiscation of guns from those who refused to swear an oath of allegiance was meant to 'deal with the potential threat coming from armed citizens who remained loyal to' another sovereign."  *Kanter*, 919 F.3d at 457 (Barrett, J., dissenting) (quoting Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 F<span style="font-variant:small-caps">ordham</span> L. R<span style="font-variant:small-caps">ev</span>. 487, 506 (2004)).

### B.  The Independent Nature of Section 922(a)(6)

Count two of the indictment alleges that Combs falsely indicated on a firearm purchase application that he was not subjected to a DVO in violation of 18 U.S.C. § 922(a)(6).  The government argues this intentional misrepresentation was material.

Section 922(a)(6) provides:

> It shall be unlawful . . . .  for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter[.]

Combs does not contend that section 922(a)(6) is unconstitutional. Instead, he asserts that he "was truthful as to the *material* questions on the form," and "[i]f the section of 922(g) is unconstitutional, then the question eliciting information about that status is necessarily irrelevant." (emphasis added) [Record No. 26] Conversely, the United States argues that section 922(a)(6) is valid regardless of section 922(g)(8)'s constitutionality. [Record No. 25]

The Sixth Circuit has previously "decided that if a felony conviction is not disclosed at the time the firearm is purchased, there would be a violation of 922(a)(6) even though later the conviction is found to be infirm for constitutional reasons." *United States v. Fryer*, 545 F.2d 11 (6th Cir. 1976) (citing *Cassidy v. United States*, 521 F.2d 1320, 1322 (6th Cir. 1975)); *see also United States v. Enyinnaya*, No. 85–5089, 1985 WL 13769, at *1 (6th Cir. Sept. 27, 1985) (indicating that "the constitutionality vel non of" a state law prohibiting the sale of handguns to aliens "had no bearing" on the defendant's violation of section 922(a)(6)). The same holds true when an individual is subject to a DVO. *Cf. United States v. Thomas*, No. 20-cr-634, 2022 WL 1803339, at *2 (N.D. Ohio June 2, 2022) ("The pertinent question is whether [the defendant] knowingly made a false statement as to whether he was subject to any court protection order, not whether he believed he was subject to a valid court protection order.").

Combs also incorrectly states that the firearm store "would have been forced to complete the sale if § 922(g)(8) is unconstitutional, which it is." [Record No. 26] But there is no compulsion to sell a firearm even if a prospective purchaser is not subjected to a DVO.

### III.

In summary, the Court having conducted a *de novo* review of the issues raised by Combs' objections [Record No. 29] to Magistrate Judge Stinnett's Report and

Recommendation [Record No. 27], and having considered the arguments of the parties, it is hereby

**ORDERED** as follows:

1. The Report and Recommendation of Magistrate Judge Matthew A. Stinnett [Record No. 27] is **ADOPTED**, in part, and **REJECTED**, in part, as explained more fully herein.

2. Defendant Combs' objections [Record No. 29] to the Magistrate Judge's Report and Recommendation are **SUSTAINED**, in part, and **OVERRULED**, in part, consistent with this Memorandum Opinion and Order.

3. Defendant Combs' motion to dismiss Count 1 of the Indictment [Record No. 23] is **GRANTED**. The defendant's motion to dismiss Count 2 of the Indictment [Record No. 23] is **DENIED**.

4. A pretrial conference will be set by separate order, during which the Court will reassign this matter for trial regarding Count 2 of the Indictment.

Dated: February 2, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky